Uh... Take your time to set up our last case this morning is number 18-14092. Royal Palm Properties LLC versus Pink Palm Properties LLC. Mr. Houser, whenever you're ready. My name is Robert Houser from West Palm Beach and I represent Royal Palm Properties. We're here asking the court to review a judgment as a matter of law or as I sometimes say judgment notwithstanding the verdict JNOV in which District Judge Middlebrooks overturned the relevant jury verdict on our opponent's counterclaim. The standard of review is de novo. Sometimes in the appellate world we don't think about what that really means but it means that this panel is sitting in Judge Middlebrooks' position when he's considering that motion and the question is would this panel independently on its own have granted that judgment as a matter of law? I submit the answer is no and the reason is we went through a three-day jury trial. We had a properly instructed jury. Nobody's complaining about the instructions. Can I ask you just a quick question there? I think there's a lot of ground to cover here and I'd hate for you to waste your time sort of with procedural ramp up. So on what basis did you get the trademark? Was it inherent distinctiveness or acquired distinctiveness? Didn't you get the trademark under section 2f which applies to at least acquired distinctiveness? We filed an application back in 2012 which was based on suggestiveness but with a backup affidavit that said also we have acquired distinctiveness. And when they granted the mark they said what? I'm not sure. I have to check that. So the reason I wonder is that there's all this talk in the briefing about the presumption of you know sort of validity but it seems to me that that probably only attaches to the ground on which you sought and obtained the mark and at least I think my own reading of the record I could be wrong about this but my own reading in the record I think is that you actually acquired the mark under the section of the code that applies to acquired distinctiveness. So my guess is that you get the presumption with respect to that but with respect to all of our discussion of inherent distinctiveness I actually wonder if you have the burden. Now you're you're covered here of course by the the JML sort of overlay in the sense that you know we have to consider all of this stuff in the light most favorable to you in the jury verdict but I do wonder about the the burden itself and the question other than to say this is their counterclaim against us. So even if we had some legal burden in a counterclaim situation the question is did they put on evidence that shows that our claim is unquestionably beyond any doubt for purposes of JML well geographic number one and only geographic but tied to the subdivision clearly in the eyes of the relevant consuming public. So there's a there's a whole bunch of moving targets here and Judge Middlebrooks essentially assumed number one the relevant consuming public is only the residents of the subdivision. He then seized on evidence that that market has been saturated by my client which actually supports acquired distinctiveness as Judge Newsome points out and then he said nope you're geographic and you only refer to the subdivision and that's what all the people here think and therefore you lose as a matter of law and with all due respect to Judge Middlebrooks the jury could have quite reasonably found a number of different things that undermine those conclusions all based on the record. Do you think your stronger argument is acquired or inherent? I don't know. I don't think we even have to get to acquire distinctiveness because I know that we have to win on that because Judge Middlebrooks himself after sitting through this trial told us in his written order I think it's on page 12 of his ruling that that the phrase Royal Palm either refers to the subdivision or quite plausibly to the town of Royal Palm Beach which for those of us who don't know is a municipality about 10 miles west of West Palm Beach and it would be known to anybody in Palm Beach County. So Judge Middlebrooks himself is misreading the Lanham Act. He thought that if the phrase Royal Palm was geographic in any sense then we lose and that's not exactly correct. Under Newbridge Judge Middlebrooks to rule against us would have had to correctly find and he did not correctly find number one that it's geographic and it unquestionably means the subdivision and means the subdivision in the minds of the relevant consuming public and nobody really knows here what the jury thought was the relevant consuming public. Judge Middlebrooks erroneously assumed that it had to be just the subdivision and surrounding residents but that's not necessarily true. Although there is a lot of evidence suggesting that right? I mean you know the subdivisions homeowners association uses that, the country club website uses that, the local media uses that, your guy was impeached mercilessly for using that and I don't dispute that but here's here's why my next point is so critical. There is an entire classification of people in the United States who are in the market for very elite winter homes in South Florida in particular this potentially this subdivision. This is the nicest subdivision in Boca Raton which is not exactly a disgusting place. So the market for this kind of home is nationwide and if it weren't for the Newbridge case I'd say worldwide. There is a worldwide market for this kind of home. On the other hand there was as far as I can tell and I haven't gone into the entire record but there seemed to be a fair amount of testimony from sellers in the seller's marketplace about what Royal Palm meant and was understood to mean but nothing really on the customer consumer buyer side right from anybody. Well when it's when sellers I think you're talking about brokers. Yes my client from time to time was was sloppy and referred to the subdivision. No no but not just your client there was testimony about how other people used so on occasion terminology but there was no I guess my question to confirm is there was no testimony from either side about the consumer reaction to Royal Palm. Exactly. Nobody introduced a survey. Nobody introduced a testimony of a prospective buyer as to what he or she or they thought those terms meant or conveyed or anything like that. All true. Blank on that right. Yes sir all true and my point is it's their counterclaim. I'm not complaining about what is morphed into a counterclaim. They're trying to invalidate my client's trademark. It's their burden to come in and say everybody thinks that Royal Palm needs the subdivision. They needed to prove that. We didn't need to disprove it and we that's why we didn't survey anybody but they didn't survey anybody. So there's this huge gap where the jury was invited to use their common sense. Your testimony I mean your testimony part of your argument is that at the very least with regards to some of the issues your experts testimony gave the jury enough of a ground to stand on. Yes sir there's no question about that but even let's give Judge Middlebrooks the benefit of the doubt that he completely disregards my expert opinion without a Daubert hearing. Let's even if he does that any reasonable jury could have learned that there are other uses for the or they're symbolic or they refer to the town of Royal Palm Beach and any jury could just find that. Wasn't there testimony also about one similar community in Hawaii? There's a couple of communities around the country. The one that's trademarked is in Texas. Yes our expert identified the one in Hawaii. There's a trademark one in Texas and but even as to that community and we're kind of getting into the question of possibility of confusion but there's no evidence from anywhere that that community or any other community is in continuous and substantial involvement in the same business that we're in right. We're in the business of brokering really high-end houses in a really exclusive subdivision. There's no testimony from the other side with the burden of dozens and dozens and dozens of other entities that have the phrase Royal Palm in them. There's no evidence that any of those entities with all due respect to them are in our line of business continuously or substantially or even that they're actually operating because anybody can open an entity on the Secretary of State. It doesn't mean that. Can I ask you a question about the architecture of the statute just to make sure I've got it clear on my own end. So as I read the district court's order, the district court seems to include the confusingly similar question like as a subset of inherent distinctiveness. Do you agree that if a mark is confusingly similar that's a standalone basis for invalidation? It sets apart. Yes. Okay good. I just want to make sure I've got it straight. I think he meant to get us on geographicness. He meant to get us on acquired excuse me on confusingly similar and I haven't had a chance to talk much about that but the other side doesn't even have standing to argue about that because they don't own the marks that are allegedly the basis for that and that's a constitutional case or controversy defect in the whole argument. Judge Middlebrooks never should have gotten into that and I'll sit down for the question. Mr. Scheidt. May it please the court. Mr. Houser. First, I would like to correct an error in the appeal brief filed by Aptly on page 16. We quote some testimony. It's the wrong quote is from plaintiff's expert cross-examination when he came back as a rebuttal expert and this appears in volume 5 appendix page 935 starting at line 5. The consuming public is the people who want to buy or sell in Royal Palm, correct? Answer, yes sir. Can you give me the Yes, volume 5 appendix page 935 which is also day 3 transfer page 195 lines 5-7. Thank you. This is important for several reasons. First, because I made a mistake and I want to correct it. Second, it identifies in response to the question who the consuming public? It's buyers and sellers not just buyers and third, their expert used the term Royal Palm like everybody else used Royal Palm to refer to the community. But as having read the party's warring descriptions of the testimony at trial, from a just a common sense perspective, doesn't Royal Palm connote much more than just this community? It connotes a type of palm tree for example. That's a town in Palm Beach County. Yes. Why doesn't that hurt you a lot given that you have the burden, the general burden to establish invalidity? Yes, it doesn't hurt us any more than apple refers to a piece of fruit and a computer. It can or cannot be a trademark. It's not required and as far as the town is concerned, there are a couple of answers. The fact that it may or may not be a piece of fruit is not the test. The fact that it may or may not be a tree is not the test. The test is what does it mean to the relevant consuming public? There was no testimony from any body. Correct. Is that a problem for your side of the case given that you had the burden on invalidity? I don't believe so for several reasons. Number one, the consuming public, the buyers and sellers included the existing residents and it was their homeowners association that used the term Royal Palm. It was their country club that used the term Royal Palm. It was the people who wrote articles in local newspapers who used the term Royal Palm in discussing this community. Now, would a survey have been better? Yes. But is a survey required in the law? No. Now, if I may go, Your Honor, to your question about acquired distinctiveness and Section 2F of the statute, if I could ask you to look at the appendix, Volume 1, Page 135, which is Plaintiff's Trial Exhibit 2, Royal Palm Properties. The third line from the bottom says it is under Section 2F, which means it was granted based on acquired distinctiveness. Okay. So that's what I thought. So I think what that means is that with respect to acquired distinctiveness, he gets the presumption you undoubtedly have the burden and the burden here not only to sort of like not only a preponderance-ish burden, but a burden here given the way the JML went down to demonstrate that no reasonable jury could have concluded otherwise, right? Correct. And with respect, I think, to inherent distinctiveness, that means, may mean, that he's got the burden, but he still gets the cover of the JML standard, right? Yes. Okay. Just so I've got the architecture straight. Absolutely. Okay. So if, to Judge Jordan's question, you know, both as to suggestiveness and as to acquired or secondary meaning distinctiveness, you've got this issue about, you know, could the phrase have meant something beyond the subdivision? If you had the, with respect to acquired distinctiveness, if you had the burden and you're trying to overcome the JML standard, Judge Jordan's question sort of rears its head again. Did you put on any evidence to carry that burden? That the mark had not acquired secondary meaning? Yes. Did anybody say, you know, did any of your witnesses say, that's what I think it means? No. That's not required. And the reason is acquired distinctiveness is based on a substantial continuous exclusive use. And the record overwhelmingly demonstrated there was not substantial continuous and exclusive use. Was it substantial? Yes. Was it continuous? Yes. Was it exclusive? No. For several reasons. First, there was the company in Hawaii, which they knew about 10 years earlier when they filed suit against someone else and Judge Cohn told them, you don't have this yet. You don't have acquired distinctiveness. You don't have secondary meaning. And here's this Hawaii company and here's one in Georgia and their own expert found one in Louisiana. We found more in Texas. The trademark office on their second trademark application found several in Texas. We found on computerized searches that their own expert approved of the case, but he has used. We found dozens in a whole bunch of states, including one in South Florida that predated the plaintiff on a Sunbiz listing. The Sunbiz listing is the Florida Corporation Division. There was a Royal Palm Properties that predated the plaintiff. But does your research indicate whether those entities are actually operating entities? I mean, I know they're registered. The Sunbiz listing, your honor, identifies that they have been filing their annual reports. That's as far as we went. I believe there was a misconception as to what Judge Middlebrook said. So you think there was no evidence, well, no evidence or insufficient evidence on exclusive use and that allowed you to overcome the presumption on acquired distinctiveness that they got through their trademark grant? Yes. There was, okay, now help me. There was no testimony on their side on exclusivity or there was some, but it was insufficient and was just a sort of scintilla that allowed the judge to grant the judgment as a matter of law. I do not remember anyone saying it was exclusive on either side. I don't remember anyone saying, quote, non-exclusive, although on behalf of the defendant, we did put in a tremendous amount of evidence that it was not exclusive. Now, here's where I believe a miscomprehension as distinction between Royal Palm as a place and Royal Palm properties as a trademark has crept in unintentionally and I think it's an unintentional misreading of what Judge Middlebrook said. And I'm referring to the last paragraph of his JMOL order, which is in volume three at page 419. He says, in sum, the evidence as to secondary meaning was insufficient to support a jury finding that the primary significance of the term, quote, Royal Palm properties, close quote, is plaintiff services. So far, that's the correct standard. Then he goes on to say rather than real estate properties in the community, meaning the Royal Palm Yacht and Country Club, or in Royal Palm Beach. In other words, he's distinguishing the term Royal Palm properties from two different communities, the Royal Palm Yacht and Country Club, which he calls the community and Royal Palm Beach, which is the location. And this is consistent with the law and it has been, I believe, unintentionally misinterpreted as meaning, well, it could be Royal Palm Beach and Royal Palm properties and it means one and the same thing. That's not what it says. The case law does not require a single geographic location for something to be primarily geographic. I actually did my homework. Judge Wright, there's a Fayetteville in Arkansas and one in North Carolina. Fayetteville is still a geographic significance. Judge Newsome, Birmingham, Michigan, Birmingham, Alabama. Judge Jordan, Miami, Florida, Miami, Ohio, Miami, California, Hollywood, Florida, Hollywood, California. The law does not require a single unitary place in order for a term to be primarily geographic. The last thing I would like to address if I may. That doesn't mean you can't trademark. I'm sorry? My alma mater, not doing as well in football terms these days, but has a registered trademark for the University of Miami. Yes, sir. Right? That is partly geographically descriptive, right? Yes. Miami University in Ohio has, I presume, a trademark for Miami University that is partly geographically descriptive. Yes. So the notion that part of a name, for lack of a better term, is geographic doesn't preclude trademark protection, right? It does not preclude it. So tell me why the existence of other royal palms here, even if they are deemed to be geographic, causes a problem for your opponent in this case, given the jury verdict? Because in this case, the testimony from plaintiffs on cross-examination, from plaintiff's witnesses, and from unchallenged documents, all said that royal palm was geographic. And once the jury heard that, there was not a scintilla of evidence to support a validity finding. Now, if I may. So everyone's going to testify that royal palm is geographic. Geographic because of where their community was based, even though it is the community based in the town of royal palm? No, sir. The community. So it's geographic because it describes the place where the community is. It could have been called red, and your argument would be the same. Correct. The community of red, and that red would have been geographic. That doesn't make much sense to me. Royal palm sounds better because it feels like a place. But if you call a community red, blue, yellow, that can't be. This is from the gut. I may be wrong. That can't be geographic, right? As far as it goes. The fact that something ultimately describes something that's geographic, doesn't mean that the appellation is geographic. It may have started off non-geographic, but by the time the evidence was presented to the jury, it was geographic. And that is the problem that I believe that the plaintiff is faced with on this appeal. Okay. One final question for me, and then I'll be quiet and let you finish. Does the geographic moniker create a problem only when the geographic limitation is in one area? In other words, if you have something that Fayetteville, Arkansas, and Fayetteville, where did you say the other Fayetteville was? North Carolina. Okay. North Carolina. Does that preclude any of those Fayetteville communities or business in those communities from trademarking something called Fayetteville Wood and Lumber Company? It depends on where they are located and what they're doing. North Carolina, and they do wood and lumber. If they're not in that geographic area of Fayetteville. They are in that geographic area. And if the consuming public, the buyers of lumber, if the consuming public associates the name with the community and not with the company, the company loses. The Miami Herald, the newspaper in this town? Yes. Trademark? It could be. What do you mean could be? Because the consuming public... People associate it with the city of Miami? No, but if the consuming public... What do you mean no? Why no? It's the evidentiary issue, your honor. If the consuming public associates... Okay, I'm going to... Herald with a newspaper... If I'm going to give you a hypothetical trial record. And like your record, everybody testifies that the Miami Herald is identified with the city of Miami in Florida, not Miami, Ohio. Does a Miami Herald get trademark protection? If they associate it as a government newspaper, no. It's not a government newspaper. They associate it as being the newspaper in Miami. Yes, it's protectable. What's the difference here with Royal Palm? Because here, the people associated it not with the plaintiff, but with the community. That's a different argument. That's the distinction. That's the argument we've been making from day one. Royal Palm is the community, not the plaintiff. So then you say that it's invalid for a different reason, not because it's geographic in scope. No, it's primarily geographic. And then there's no acquired distinctiveness or secondary meaning. The public is not associating it with the plaintiff. That's the distinction. Okay, I think I understand. Okay, thank you very much. We really appreciate it. I might have just a few extra seconds to answer the question about standing. Sure, you can have one minute. Go right ahead. The concept of standing is already covered by the statute, the Lanham Act, Title 15 of the United States Code 1052D and 1064. Any person who believes they will be injured has the right to challenge a registration. The person who thinks they will be injured does not have to be first. They do not have to have their own registration. That is what the statute said. So in the sense of constitutional standing, case for controversy standing, that's covered by statute. The defendant doesn't want to be sued again. Defendant has standing to challenge it. The other half of that is when the plaintiff, in this case, tried to get a second trademark, the trademark office said, no, you're confusionally similar to these other Royal Palm trademarks. It happens, as everyone agreed, that the examiner didn't locate them when he evaluated the plaintiff's trademark the first time. The examiner found them the second time and the plaintiff declined to challenge the likelihood of confusion between Royal Palm properties and these other two earlier marks. So that's independent of geographic, independent of secondary meaning, independent of acquired distinctiveness. Thank you, Your Honor. All right. Thank you very much. When I sat down, I remembered the jury instructions. The parties agreed in their joint jury instructions that the defendant had the burden of proof on everything. So I really appreciate Judge Newsom's question about who had the burden of proof. But these parties agreed that the other side had the burden of proof. And so that's one of the reasons I was thrown. They agreed in the jury instructions that they have the burden of proof for everything. The geographic issue, they agreed they had the burden of proof in the jury instructions on acquired distinctiveness. And finally, on the attempt to challenge confusingly similar, standing in the shoes of the Texas Royal Palm's entities. So that's an easy answer to a very hard question. Let me ask you, in my mind, I think the most important rehabilitation you have to do, and I think it runs both to suggestiveness, that is under the umbrella of inherent distinctiveness, suggestiveness beyond geographic descriptiveness, and also to secondary meaning or acquired distinctiveness. He says you put on no evidence. There is no evidence in the record from which a jury could conclude, a reasonable jury could conclude, that Royal Palm means something other than, more than the subdivision. Our expert testified that it means a tree. And he testified to the existence of other entities that begin with the phrase Royal Palm that have nothing to do with this subdivision. And it's sort of common sense. They put on evidence that there are dozens of entities out there that say Royal Palm, and nobody is suggesting with a straight face that they mean this community of $10 million houses in Boca. They don't. So the relevant consuming public, I have no idea what that group of people is. I think the jury believed that the relevant consuming public is a lot of people all over the country and potentially the world who hear the phrase Royal Palm and do they immediately know that we're talking about a little subdivision in Boca Raton, Florida. And a jury could conclude, no, they don't mean that. And much more information would be needed to ultimately tie my client's business to Royal Palm property. So that's the issue that the district judge shouldn't have touched. If the jury thought quite plausibly that the relevant consuming public is big, and it's not just people in the neighborhood who use slang to refer to their own neighborhood as Royal Palm to save words. If it's anybody out there who might buy a summer home in South Florida at the very elite level, like $10, $20, $30 million house, those people do not know what Royal Palm is until they subsequently learn. And so if anybody had done a survey of the relevant consuming public, not done here, they would have learned that the relevant consuming public does not know that Royal Palm means the subdivision. They just don't. And so our experts testimony, at least on that point, was the scintilla of evidence that the jury could have grasped on. But I personally think they relied on common sense. They know what the words Royal Palm means. I think this court knows what the word Royal Palm means, and I'd be willing to wager that most people in this courtroom did not know that Royal Palm is a community in Boca Raton until I opened my mouth. It's just that simple. And then we have the fact that Royal Palm is also a community in West Palm Beach that we all do know about. So the jurors and the judge and everybody else in Palm Beach County knew there's a town of Royal Palm Beach, and the phrase Royal Palm is probably evoking the town of Royal Palm Beach in many, many, many, many contexts, including real estate, real estate management, or anything else having to do with property. It could be a title company for all we know. And that raises another point that he brought up. I think he's trying to attack the initial registration, by claiming that there were other Royal Palm property type entities, but he doesn't know the line of business they're in. He doesn't know if they were continuously in operation, and he's relying on hearsay. So even if it comes in, notwithstanding my hearsay argument, it doesn't have the weight. Nobody knows what these entities are actually doing, and it would be error to presumptively rely conclusively on something that somebody's filing with the Secretary of State every year, even if it did contain, which it doesn't, a description of the line of business. So I don't have time to get into the constitutional standing argument. I do invite the court to read the cases, not just Coach House, but the related cases on standing. And in case after case after case, when we see somebody defending a trademark infringement claim, and they try to rely on a third party's prior registration, they're getting kicked out of court because they don't have standing under the Latin doctrine, jus tertiae. So I don't have time to go through each of those cases, but I do invite the court to look at that. They don't have standing to complain in the shoes of the Royal Palms entities in Texas. So we urge the court to just reinstate the jury verdict that came in before the judge entered the JMOL, JNOV, and I really appreciate the court's attention. All right, thank you both very much. We're in recess until tomorrow morning.